2019 WL 4924395
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

IN RE: Application of Antonio DEL VALLE RUIZ
and others for an order to take discovery for use in
foreign proceedings pursuant to 28 U.S.C. § 1782

Docket Nos. 18-3226 (L),
18-3474 (Con), 18-3629 (XAP)
|
August Term, 2018
|
Argued: March 25, 2019
|
Decided: October 7, 2019

**Synopsis**
**Background:** Investors in Spanish bank and investment and asset-management firms filed separate applications seeking discovery from purchaser of the bank and its New York-based affiliate concerning the financial status of the bank for use in foreign proceedings arising from the sale of the bank. The United States District Court for the Southern District of New York, Edgardo Ramos, J., 342 F.Supp.3d 448, denied investors' application and denied in part firms' application. Investors and firms appealed, and the appeals were consolidated.

**Holdings:** In a case of first impression, the Court of Appeals, Hall, Circuit Judge, held that:

the "resides or is found" language in statute that permits domestic discovery for use in foreign proceedings extends to the limits of personal jurisdiction consistent with due process;

purchaser's use of New York firms to conduct due diligence on bank for private sale that fell through before bank was forced into resolution and acquired by purchaser was not proximate reason that documents were available, and thus, District Court lacked personal jurisdiction over purchaser;

District Court is not categorically barred from allowing discovery of evidence located abroad under statute that permits domestic discovery for use in foreign proceedings, abrogating 🚩 *Purolite Corporation v. Hitachi America, Ltd.*,

2017 WL 1906905, 🚩 *In re Application of Kreke Immobilien KG*, 2013 WL 5966916, 🚩 *In re Godfrey*, 526 F.Supp.d 417, and 🚩 *In re Microsoft Corporation*, 428 F. Supp. 2d 188; and

District Court acted within its discretion when permitting discovery from affiliate.

Affirmed.

**Procedural Posture(s):** On Appeal; Other.

Appeal from the United States District Court for the Southern District of New York, Nos. 18-mc-85, 18-mc-127 – Edgardo Ramos, *Judge*.

**Attorneys and Law Firms**

Javier H. Rubinstein, P.C. (C. Harker Rhodes IV, Kirkland & Ellis LLP, Washington, DC, Lauren F. Friedman, Lucila I.M. Hemmingsen, Joseph Myer Sanderson, Kirkland & Ellis LLP, New York, NY, on the brief), Kirkland & Ellis LLP, Chicago, IL, for Petitioners–Appellants Antonio del Valle Ruiz, et al.

David Mader (Peter Evan Calamari Bento, on the brief), Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, for Petitioners–Appellants–Cross-Appellees Pacific Investment Management Company LLC and Anchorage Capital Group, LLC.

Elbert Lin (Samuel A. Danon, Hunton Andrews Kurth LLP, Miami, FL, Johnathon E. Schronce, Hunton Andrews Kurth LLP, Richmond, VA, Joseph J. Saltarelli, Hunton Andrews Kurth LLP, New York, NY, on the brief), Hunton Andrews Kurth LLP, Richmond, VA, for Respondents–Appellees Banco Santander, S.A., Santander Holdings U.S.A., Inc., and Santander Bank, N.A. and Respondent–Appellee–Cross-Appellant Santander Investment Securities Inc.

Before: Parker, Hall, and Droney, Circuit Judges.

**Opinion**

hall, Circuit Judge:

**\*1** Banco Santander S.A. ("Santander") acquired Banco Popular Español, S.A. ("BPE") after a government-forced sale. Petitioners, a group of Mexican nationals and two investment and asset-management firms, initiated or sought to intervene in various foreign proceedings contesting the legality of the acquisition. Petitioners then filed in the

Southern District of New York two applications under 28 U.S.C. § 1782 seeking discovery from Santander and its New York-based affiliate, Santander Investment Securities Inc. ("SIS"), concerning the financial status of BPE. The district court (Ramos, *J.*) denied the applications for the most part, concluding that it lacked personal jurisdiction over Santander. The court granted discovery against SIS and in doing so rejected Santander's argument that § 1782 does not allow for extraterritorial discovery. These consolidated appeals follow.

We are first asked to delineate the contours of § 1782's requirement that a person or entity "resides or is found" within the district in which discovery is sought. We hold that this language extends § 1782's reach to the limits of personal jurisdiction consistent with due process. We nonetheless conclude that Santander's contacts with the Southern District of New York were insufficient to subject it to the district court's personal jurisdiction.

We are next tasked with deciding whether § 1782 may be used to reach documents located outside of the United States. We hold that there is no per se bar to the extraterritorial application of § 1782, and the district court may exercise its discretion as to whether to allow such discovery. We conclude that the district court acted well within its discretion here in allowing discovery from SIS.

Having so held, we affirm the district court's orders.

I.

Section 1782 provides that "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). The order may prescribe the applicable practice and procedure for discovery, but "[t]o the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." *Id.*

A.

As of June 2017, BPE was Spain's sixth-largest bank, with assets of approximately €147 billion. After the financial crisis of 2008, however, BPE became aware that it had many

toxic and nonperforming assets ("NPAs") on its books. BPE implemented between 2012 and 2016 a variety of measures to address its exposure to NPAs and did so without any government assistance. By the end of 2016, however, business conditions began to deteriorate after Spanish governmental entities started making large withdrawals.

In May 2017, BPE, contemplating a private sale, created a virtual data room for interested buyers. Among those interested was Santander, which retained New York-based UBS and Citibank to advise on a contemplated bid. After completing its due diligence, Santander purportedly was prepared to offer to buy BPE for €3 billion with an additional capital injection of €4 billion. Meanwhile, BPE suffered an all-out run on deposits after reports that it was a bankruptcy risk and facing resolution, a form of government-forced sale. [1]

**\*2** On June 6, 2017, the European Central Bank informed the European Single Resolution Board that BPE was "failing or likely to fail." J. App. 115. That same day, and at the direction of the Single Resolution Board, Spain's national banking supervisory authority ("FROB") invited several banks, including Santander, to submit bids by midnight, ostensibly pursuant to a resolution. Only Santander submitted a bid, and that bid was for one Euro (€1). [2] On June 7, 2017, it was publicly announced that Santander's bid had been accepted. Apparently, another potential bidder had complained that it did not have enough time to prepare a bid. According to a news report, Santander's CEO had stated that "Santander was able to do it because we had done due diligence 20 days earlier. Otherwise, it would have been impossible." J. App. 469.

As a result of BPE's resolution, a group of 55 Mexican investors in BPE (the "del Valle Ruiz Petitioners"), as well as United States-based investment and asset management firms Pacific Investment Management Company LLC and Anchorage Capital Group, LLC (the "PIMCO Petitioners"), suffered significant financial losses. Both sets of petitioners brought legal challenges to the BPE resolution in the Court of Justice of the European Union, the del Valle Ruiz Petitioners brought an international arbitration proceeding against Spain, and the PIMCO Petitioners sought to intervene in Spanish criminal proceedings against BPE. Santander has sought, but at the time of argument had not yet been granted leave to intervene in these proceedings, all of which are ongoing. [3]

B.

The del Valle Ruiz Petitioners filed a § 1782 application in the Southern District of New York seeking discovery from Santander and its wholly-owned subsidiaries Santander Holdings U.S.A., Inc. ("SHUSA") and Santander Bank, N.A. ("SBNA"). The del Valle Ruiz Petitioners sought documents relating to BPE's liquidity position, both the private-sale and government-sale process, and communications with regulators concerning BPE or the BPE resolution. The PIMCO Petitioners filed a § 1782 application against Santander, SHUSA, SBNA, and SIS, seeking similar documents. [4] Santander protested that it was not "found" in the Southern District within the meaning of § 1782, § 1782 does not apply to documents or witnesses located overseas, and discovery was otherwise unwarranted. Santander conceded that SIS "resides or is found" in the Southern District but contended that SIS was not involved with the acquisition of BPE.

C.

The district court denied the del Valle Ruiz Petitioners' application and denied in part the PIMCO Petitioners' application, but the court granted the PIMCO Petitioners' request for discovery from SIS. *See generally In re del Valle Ruiz*, 342 F. Supp. 3d 448 (S.D.N.Y. 2018). The court first concluded that whatever the statutory meaning of "found," at a minimum § 1782 must comport with constitutional due process, i.e., the court must have personal jurisdiction.

*Id.* at 452–53. Under *Daimler AG v. Bauman*, 571 U.S. 117, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014), none of the Santander entities except SIS met the requirement for general jurisdiction. *In re del Valle Ruiz*, 342 F. Supp. 3d at 453–57, 459. With respect to specific jurisdiction, all of Santander's alleged New York contacts took place after the resolution had been adopted, and the litigation abroad therefore could not be said to arise out of or relate to those contacts. [5] *Id.* at 453–59.

**\*3**  The district court concluded that SIS "resides or is found" in the Southern District of New York, the court thus had discretion to grant discovery against SIS, and discovery was warranted under *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004). *In re del Valle Ruiz*, 342 F. Supp. 3d at 459–60. In doing so, the court noted Santander was not a party to any of the foreign proceedings and, although it had been ordered to produce some discovery in the Spanish criminal proceeding, it was not "an especially *active* participant" in that proceeding. *Id.* at 549. The court rejected Santander's extraterritoriality argument, concluding that producing documents located abroad would not be unduly burdensome or intrusive. *Id.* at 459–60 (citing *In re Accent Delight Int'l Ltd.*, Nos. 16-mc-125, 18-mc-50, 2018 WL 2849724, at *4 (S.D.N.Y. June 11, 2018), *appeal docketed*, No. 18-1755). The district court did not mention SIS specifically in its *Intel* analysis. These consolidated appeals follow.

II.

These appeals present several issues of first impression. The parties dispute the proper interpretation of § 1782's requirement that a respondent "resides or is found" in the district in which the district court ordering discovery sits. [6] Petitioners insist that § 1782's use of the word "found" is coextensive with the limits of personal jurisdiction consistent with due process (and that less process is due for nonparties), whereas Santander argues that we must restrict § 1782's "found" language to general "tag" jurisdiction over individuals. [7] Santander also contends that § 1782 does not reach evidence located abroad and the district court abused its discretion by allowing discovery against SIS, both points with which Petitioners naturally disagree. [8] We address these arguments in turn.

III.

"We review *de novo* a district court's ruling that a petition satisfies Section 1782's jurisdictional requirements."

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 243 (2d Cir. 2018). We likewise review *de novo* a district court's personal-jurisdiction ruling, "construing all pleadings and affidavits in the light most favorable to the [party asserting jurisdiction] and resolving all doubts in [that party's] favor." *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018).

Section 1782 does not define "found." Neither did the district court. It instead concluded that even if "found" extended to the limits of personal jurisdiction consistent with due process, Petitioners failed to demonstrate that Santander was subject

to either the court's general or specific personal jurisdiction. This is where we begin.

### A.

Santander urges us essentially to cabin "found" to the facts of *In re Edelman*, 295 F.3d 171 (2d Cir. 2002). Effectively, this would limit § 1782's reach to individuals and entities over which a district court has general personal jurisdiction. This approach admittedly would result in a tidy, easily applicable rule. We nonetheless decline the invitation and instead conclude that the statutory scope of "found" extends to the limits of personal jurisdiction consistent with due process.

**\*4** In *In re Edelman*, this Court's only case to address the "found" requirement of § 1782, we addressed that requirement's application to an individual. The respondent there focused on the statutory language—"*is* found," 28 U.S.C. § 1782(a) (emphasis added)—to argue "that a deponent must be residing or be found in the district contemporaneously with the district court's issuance of the discovery order," *In re Edelman*, 295 F.3d at 177–78, whereas the petitioner asserted that a deponent need only be found in the district when served, *id.* at 178. We reasoned that "another part of § 1782(a) supports a flexible reading of the phrase 'resides or is found,'" specifically, the protections afforded by Rules 45 and 26 of the Federal Rules of Civil Procedure as well as the district court's "prudent exercise of discretion." *Id.* at 178–79.

We further noted that "the question of what it means to be found in a particular locale is already the subject of well-settled case law on territorial jurisdiction," i.e., tag jurisdiction. *Id.* at 179 (citing *Burnham v. Superior Ct. of Cal.*, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) (plurality opinion)). "Given that this so-called tag jurisdiction is consistent with due process," we reasoned, "we do not think that § 1782(a), which is simply a discovery mechanism and does not subject a person to liability, requires more." *Id.* Given this, and legislative history expressing Congress's "aim that the statute be interpreted broadly and that courts exercise discretion in deciding whether, and in what manner, to order discovery in particular cases," we concluded that tag jurisdiction was sufficient to satisfy §

1782's "found" requirement. *Id.* at 179–80. But we did *not* conclude that tag jurisdiction was *necessary* to satisfy § 1782. Indeed, our focus on tag jurisdiction comporting with due process in no way suggests that § 1782's reach should be coextensive only with the limits of a district court's *general* jurisdiction.

Santander nonetheless finds some support for its position in *In re Edelman*'s analysis of § 1782's legislative history. As originally enacted in 1948, § 1782 provided for "[t]he deposition of any witness residing within the United States," so long as the deposition was "taken before a person authorized to administer oaths designated by the district court of any district where the witness resides or may be found." Act of June 25, 1948, Pub. L. No. 80-773, § 1782, 62 Stat. 869, 949. The next year, Congress struck the first "residing," but left the latter "reside[ ]" or "be found" requirement. Act of May 24, 1949, Pub. L. No. 81-72, § 93, 63 Stat. 89, 103. As we noted, "the change was intended to 'correct[ ] restrictive language in section 1782 ... and permit [ ] depositions in any judicial proceeding without regard to whether the deponent is "residing" in the district *or only sojourning there*.' " *In re Edelman*, 295 F.3d at 179–80 (alterations in original) (quoting H.R. Rep. No. 81-352, at 40 (1949), *reprinted in* 1949 U.S.C.C.A.N. 1254, 1270). We further noted that "a sojourn is a temporary stay (as of a traveler in a foreign country)." *Id.* at 180 (internal quotation marks omitted). Santander hangs its hat on this focus on an individual's physical presence to justify its preference to restrict "found" to general tag jurisdiction.

Santander is not alone: Hans Smit, "a leading academic commentator on the statute who played a role in its drafting," *Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 119 (2d Cir. 2015), has stated of the term "found" that "[t]he evident statutory purpose is to create adjudicatory authority based on presence. Insofar as the term applies to legal rather than natural persons, it may safely be regarded as referring to judicial precedents that equate systematic and continuous local activities," i.e., general jurisdiction, "with presence." Hans Smit, *American Assistance to Litigation in Foreign and International Tribunals: Section 1782 of Title 28 of the U.S.C. Revisited*, 25 SYRACUSE J. INT'L L. & COM. 1, 10 (1998) (footnote omitted).

**\*5** We are not convinced. Courts have consistently given broad interpretations to similar "found" language in other statutes. *See, e.g.*, *Waeltz v. Delta Pilots Ret. Plan*, 301 F.3d 804, 810 (7th Cir. 2002); *Varsic v. U.S. Dist. Ct.*, 607 F.2d 245, 248–49 (9th Cir. 1979); *see also* Appellant Br. at 27–32. We see no reason to replace the "flexible reading of the phrase 'resides or is found' " that we considered appropriate in *In re Edelman*, 295 F.3d at 178, with the cramped reading Santander suggests. Indeed, we have repeatedly recognized Congress's intent that § 1782 be "interpreted broadly," especially given the district court's ability "to exercise discretion in deciding whether, and in what manner, to order discovery in particular cases." *See id. at 180*; *see also* *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (noting that, in pursuit of the statute's "twin goals" of providing "equitable and efficacious discovery procedures in United States courts for the benefit of tribunals and litigants involved in litigation with international aspects" and encouraging "foreign countries by example to provide similar means of assistance to our courts," "the statute has, over the years, been given increasingly broad applicability" (internal quotation marks omitted)). We hold, accordingly, that § 1782's "resides or is found" language extends to the limits of personal jurisdiction consistent with due process.

Having so concluded, we turn next to whether Santander's contacts with the Southern District were sufficient to subject it to the district court's specific personal jurisdiction.[9]

B.

"The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) (internal quotation marks omitted). "[T]he touchstone due process principle has been that, before a court may exercise jurisdiction over a person or an organization, such as a bank, that person or entity must have sufficient 'minimum contacts' with the forum 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.' " *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014) (quoting *Int'l*

*Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

For specific jurisdiction, "there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.' " *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, ––– U.S. ––––, 137 S. Ct. 1773, 1780, 198 L.Ed.2d 395 (2017) (alteration in original) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S.Ct. 2846, 180 L.Ed.2d 796 (2011)). Put differently, "[s]pecific jurisdiction ... permits adjudicatory authority only over issues that 'aris[e] out of or relat[e] to the [entity's] contacts with the forum.' " *Gucci Am.*, 768 F.3d at 134 (some alterations in original) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

In principle, the two-step analysis is well established: First, the court must decide if the individual or entity has "purposefully directed his activities at ... the forum and the litigation ... arise[s] out of or relate[s] to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (internal quotation marks and citation omitted). Second, the court must "determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Id. at 476, 105 S.Ct. 2174* (internal quotation marks omitted). But "[t]he Supreme Court has not ... addressed specific jurisdiction over nonparties." *Gucci Am.*, 768 F.3d at 136.

In *Gucci America*, we suggested the following framework for nonparties: (1) "first assess the connection between the nonparty's contacts with the forum and the order at issue" and (2) "then decide whether exercising jurisdiction for the purposes of the order would comport with fair play and substantial justice." *Gucci Am.*, 768 F.3d at 137. We further noted that at least one circuit had likewise applied a "translated" version of the specific-jurisdiction test to discovery requests "by focusing on the connection between the nonparty's contacts with the forum and the discovery order at issue." *Id. at 141* (citing *Application to Enforce Admin. Subpoenas Duces Tecum of the SEC v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996)). This provides a starting point, but several issues somewhat muddy the analysis.[10]

**\*6** Petitioners ask that we add clarity to two unresolved issues of specific personal jurisdiction. Petitioners first request that we address exactly what process is due an entity such as Santander, which is not subject to potential liability. They insist that less process is due and that the process Santander received was thus sufficient. Petitioners next seek guidance on what contacts are necessary to give rise to specific personal jurisdiction. That is, what exactly do "arising out of" and "related to" mean in this context? Petitioners insist that "related to" encompasses a much broader swath of conduct than "arising out of," and it includes conduct such as Santander's forum contacts here.

### 1.

Petitioners first urge us to conclude that the process due nonparties is less than that due defendants, though Petitioners fail to define what that "less" might mean.[11] True, we have recognized that a "person who is subjected to liability ... far from home may have better cause to complain of an outrage to fair play" than a nonparty. *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 20 (2d Cir. 1998). But we have also observed that a nonparty may have interests, such as avoiding the burdens of discovery, "genuinely independent" of any intent to frustrate a court order. *See* *Heyman v. Kline*, 444 F.2d 65, 65–66 (2d Cir. 1971); *see also* *Gucci Am.*, 768 F.3d at 137 n.17 (recognizing these views). We decline to hold that there is a categorically lower showing of due process needed to obtain discovery from a nonparty. Instead, we think it enough for purposes of due process in these circumstances that the nonparty's contacts with the forum go to the actual discovery sought rather than the underlying cause of action.

### 2.

Petitioners next ask us to divine the difference between "arising out of" and "related to," a difference the Supreme Court has yet to concede, much less construe. *See* *Helicopteros Nacionales*, 466 U.S. at 415 n.10, 104 S.Ct. 1868 (declining to reach the issues). But regardless of what, if any, conceptual distance separates "arising out of" and "related to," we have always required some *causal* relationship between an entity's in-forum contacts and the

proceeding at issue. *See* *SPV Osus*, 882 F.3d at 344 (observing that courts differ on whether proximate or but-for causation is sufficient for specific personal jurisdiction but noting that "the standard applied [in this Circuit] depends on 'the relationship among the defendant, the forum, and the litigation.' " (quoting *Chew v. Dietrich*, 143 F.3d 24, 29 (2d Cir. 1998))).

In the liability context, "[t]he exercise of specific jurisdiction depends on in-state activity that *gave rise to the episode-in-suit.*" *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 331 (2d Cir. 2016) (internal quotation marks omitted); *see also* *Bristol-Myers Squibb*, 137 S. Ct. at 1781 (holding that unrelated contacts cannot diminish the required showing of an affiliation between the forum and the underlying controversy). Translated to account for a § 1782 respondent's nonparty status, we thus hold that, where the discovery material sought proximately resulted from the respondent's forum contacts, that would be sufficient to establish specific jurisdiction for ordering discovery. That is, the respondent's having purposefully availed itself of the forum must be the primary or proximate reason that the evidence sought is available at all. On the other hand, where the respondent's contacts are broader and more significant, a petitioner need demonstrate only that the evidence sought would not be available but for the respondent's forum contacts.[12]

### 3.

**\*7** That settled, we turn to the case at hand. The district court concluded that Santander's related forum contacts all postdated the acquisition of BPE and could therefore not be even but-for "causes" of the availability of the evidence sought in discovery. With one exception, we agree. That exception is Santander's use of two New York City firms, UBS and Citibank, to conduct due diligence on BPE for a private sale that fell through before BPE was forced into resolution. According to Santander's CEO, *but for* having conducted that due diligence, "it would have been impossible" for Santander to submit its resolution bid in time. *See* J. App. 469. But this is Santander's only forum contact that was connected to the discovery sought. Petitioners were therefore required to show that this contact was the *proximate* reason the evidence sought was available, not merely that the evidence would not have been available but for the contact. This they failed to do. The only conduct that Petitioners claim is a cause of their discovery request is described in their affidavit as follow: "According to media reports, Santander

apparently was able to complete a full due diligence of BPE approximately 20 days before the Resolution ... and had retained UBS and another New York-based investment banking and financial services company as advisors in the contemplated bid." J. App. 108. This in-forum conduct relates only to BPE's presolution effort to seek a buyer. But the Petitioners' claim here (and likewise the bulk of the discovery sought) arises from a separate financial transaction: the forced sale of BPE. [13] *See SPV Osus*, 882 F.3d at 344–45. We thus conclude that the district court properly held that it lacked personal jurisdiction over Santander.

The district court did conclude, however, that it had general personal jurisdiction over SIS, a conclusion not challenged on appeal. We thus turn next to whether § 1782 allows for the discovery from SIS of evidence located abroad. That is, does § 1782 apply extraterritorially?

### IV.

Santander, on behalf of SIS, insists that the district court erred by not applying a per se bar against discovery under § 1782 of evidence located abroad, relying on the presumption against extraterritoriality. "Because the reach and applicability of a statute are questions of statutory interpretation, we review a lower court's application of the presumption against extraterritoriality," or as here, its failure to do so, "*de novo.*" *See In re Picard*, 917 F.3d 85, 96 (2d Cir. 2019).

The "canon of statutory construction known as the presumption against extraterritoriality" states that "[a]bsent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *RJR Nabisco, Inc. v. European Cmty.*, --- U.S. ----, 136 S. Ct. 2090, 2100, 195 L.Ed.2d 476 (2016). The presumption both "serves to avoid the international discord that can result when U.S. law is applied to conduct in foreign countries" and also "reflects the more prosaic commonsense notion that Congress generally legislates with domestic concerns in mind." *Id.* (internal quotation marks omitted). We agree with Petitioners that this presumption has no role to play here.

The presumption against extraterritoriality is "typically appl[ied] to discern whether an Act of Congress regulating conduct applies abroad." *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116, 133 S.Ct. 1659, 185 L.Ed.2d 671

(2013). But § 1782 "is simply a discovery mechanism and does not subject a person to liability." *See In re Edelman*, 295 F.3d at 179. To be sure, the Supreme Court has stated in dicta that "we must ask this question," i.e., whether the presumption against extraterritoriality has been rebutted, "regardless of whether the statute in question regulates conduct, affords relief, or merely confers jurisdiction." *RJR Nabisco*, 136 S. Ct. at 2101. But the Court's reference to conferring jurisdiction concerned the statute at issue in *Kiobel*, where the Court noted that the statute did "not directly regulate conduct or afford relief" but nonetheless "allow[ed] federal courts to recognize certain causes of action" and was thus subject to the same "principles underlying the canon of interpretation." *See Kiobel*, 569 U.S. at 116, 133 S.Ct. 1659; *see also RJR Nabisco*, 136 S. Ct. at 2100–01. The Supreme Court has never applied the presumption against extraterritoriality to a "strictly jurisdictional" statute, *see Kiobel*, 569 U.S. at 116, 133 S.Ct. 1659, not otherwise tethered to regulating conduct or providing a cause of action, *see* RESTATEMENT (FOURTH) OF FOREIGN RELATIONS LAW § 404 cmt. a & n.3 (2018). We see no reason to do so here. [14]

**\*8** Still, lower courts in this Circuit have split on whether § 1782 can be used to reach documents stored overseas, [15] and we have yet to address the issue. [16] *See In re Accent Delight Int'l Ltd.*, 696 F. App'x 537, 539 (2d Cir. 2017) (summary order). In *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194 (11th Cir. 2016), the Eleventh Circuit became the first circuit court so far to address whether § 1782 applies extraterritorially. The Eleventh Circuit reasoned that the text of § 1782 authorizes discovery pursuant to the Federal Rules of Civil Procedure. The Federal Rules of Civil Procedure in turn authorize extraterritorial discovery so long as the documents to be produced are within the subpoenaed party's possession, custody, or control. Hence § 1782 likewise allows extraterritorial discovery. *See id.* at 1199–1200.

The Eleventh Circuit concluded, then, that "the location of responsive documents and electronically stored information —to the extent a physical location can be discerned in this digital age—does not establish a *per se* bar to discovery under § 1782." *Id.* at 1200. We find this reasoning persuasive. Our previous dicta notwithstanding, we join the Eleventh Circuit in holding that a district court is not categorically barred from allowing discovery under § 1782 of evidence located abroad.

That said, we note that a court may properly, and in fact should, consider the location of documents and other evidence when deciding whether to exercise its discretion to authorize such discovery. *Cf. Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015) ("[W]e have instructed that it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." (internal quotation marks omitted)).

**\*9** Having so decided, we turn finally to Santander's argument that the district court abused its discretion by granting discovery against SIS.

## V.

Once a district court has concluded that it has jurisdiction, "[w]e review the decision to grant a Section 1782 petition for an abuse of discretion." *Kiobel by Samkalden*, 895 F.3d at 244.

"To guide district courts in the decision to grant a Section 1782 petition, the Supreme Court in *Intel* discussed non-exclusive factors (the '*Intel* factors') to be considered in light of the 'twin aims' of section 1782 ...." *Id.* "The *Intel* factors are not to be applied mechanically," and "[a] district court should also take into account any other pertinent issues arising from the facts of the particular dispute." *Id. at 245*. Those factors are (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the

foreign government or the court or agency abroad to U.S. federal-court assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is "unduly intrusive or burdensome." *Intel, 542 U.S. at 264–65, 124 S.Ct. 2466*.

Santander primarily protests that the district court failed to analyze any of the factors with respect to SIS. The district court stated that it considered the *Intel* factors as to SIS and found "that discovery against SIS is appropriate" but failed to identify SIS in its subsequent analysis. *See In re del Valle Ruiz, 342 F. Supp. 3d at 459*. Nonetheless, the factors plainly weighed in favor of discovery against SIS. First, SIS is not a party to any of the foreign proceedings. Second, there is no evidence that the foreign proceedings would be unreceptive to the evidence. Third, no argument has been made that Petitioners are attempting to procure documents from SIS in contravention of restrictions in place in the foreign proceedings. And fourth, neither Santander nor SIS has made any showing that the production of any responsive documents would be unduly intrusive or burdensome.

## CONCLUSION

For the foregoing reasons, we hold that (1) § 1782's "resides or is found" language extends its reach to the limits of personal jurisdiction consistent with due process, but Santander's forum contacts were nonetheless insufficient to subject it to the district court's personal jurisdiction and (2) there is no per se bar under § 1782 to extraterritorial discovery, and the district court acted within its discretion when permitting discovery from SIS. We AFFIRM the orders of the district court.

**All Citations**

--- F.3d ----, 2019 WL 4924395

Footnotes

1    *See generally* Regulation 806/2014, of the European Parliament and of the Council of 15 July 2014 on Establishing Uniform Rules and a Uniform Procedure for the Resolution of Credit Institutions and a Single Resolution Fund and Amending Regulation (EU) No 1093/2010, 2014 O.J. (L 225) 1 (discussing the resolution process).

2    Yes, really: One Euro. *See* J. App. 685 (letter from FROB stating that bids for the purchase of all BPE shares "must be an exact figure in Euros not a range and must be equal to or greater than one Euro (€1)"); *see also* J. App. 694.

3    After briefing and argument, Santander informed this Court that it has been allowed to intervene in the European Union proceedings. Appellees' Fed. R. App. P. 28(j) Letter. Given our discussion below, this development does not affect the outcome of these appeals.

4    Santander is a Spanish banking company with its principal place of business in Madrid, Spain. SHUSA is a Virginia corporation with its principal place of business in Boston, Massachusetts. SBNA is a national banking association with its principal place of business in Boston, Massachusetts. SIS is a Delaware corporation with its principal place of business in New York, New York. Petitioners make no arguments on appeal concerning SHUSA or SBNA. Nor do they argue that either of these entities should somehow be treated as agents of Santander. Accordingly, we focus on only Santander and SIS.

5    Although the district court specifically mentioned the retention of investment banks, and specifically noted that those banks were retained "prior to the sale of [BPE], to explore financing options for its acquisition," the court failed to provide any rationale for why that contact was insufficient. See In re del Valle Ruiz, 342 F. Supp. 3d at 458.

6    Both parties appear to assume that "resides" is properly understood to refer to where an individual or entity is "essentially at home" for purposes of general personal jurisdiction.

7    Tag jurisdiction refers to a court's exercise of personal jurisdiction over an individual who is served, and thus "tagged," while physically present in the forum. See 🔖 In re Edelman, 295 F.3d 171, 179 (2d Cir. 2002) (citing 🔖 Burnham v. Superior Ct. of Cal., 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990) (plurality opinion)); see also 🔖 Kadic v. Karadzic, 70 F.3d 232, 247 (2d Cir. 1995) ("Fed. R. Civ. P. 4(e)(2) specifically authorizes personal service of a summons and complaint upon an individual physically present within a judicial district of the United States, and such personal service comports with the requirements of due process for the assertion of personal jurisdiction.").

8    The Institute of International Bankers have moved for leave to file an amicus curiae brief in support of Santander. That motion has been granted.

9    Although Petitioners insist that "there is good reason to believe that the district court had general jurisdiction over Santander for discovery purposes," they do not press this argument on appeal, see Appellant Br. at 36–37, and we do not consider it.

10   We note that in the context of a § 1782 application, the relevant "forum" is limited to the district in which the district court sits. See 28 U.S.C. § 1782(a) (referring to "[t]he district court of the district in which a person resides or is found").

11   Although Santander and SIS are technically "parties" to this § 1782 proceeding, they are functionally nonparties in the sense that they are not subject to liability in the underlying foreign proceedings.

12   We realize that the use of terminology relating to causation is a somewhat awkward fit for discovery. Nonetheless, we think that the focus on the relationship between a § 1782 respondent's forum contacts and the resulting availability of the evidence is a workable translation of the normal personal-jurisdiction framework. For instance, an applicant could target its discovery to all documents relating to x created during the course of respondent's engagement with forum entity y. That our holding will generally require a § 1782 applicant to provide additional specificity concerning the discovery it seeks is a feature, not a flaw. Cf. Smit, supra, at 11.

13   We need not speculate whether the result would be different had Petitioners sought, for instance, only documents produced by the New York firms, rather than documents concerning BPE more generally, because Petitioners have pressed no such argument either in the district court or on appeal.

14   Even if we were to conclude that the presumption against extraterritoriality is applicable to § 1782, we would nonetheless conclude that Congress's incorporation of the Federal Rules of Civil Procedure, which had by then been interpreted to allow for extraterritorial discovery, see, e.g., 🔖 Societe Internationale Pour Participations Industrielles Et Commercielles, S.A. v. Rogers, 357 U.S. 197, 199–200, 204–06, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) (applying the "possession, custody, or control" test to documents held abroad); see also Act of Oct. 3, 1964, Pub. L. No. 88-619, § 9(a), 78 Stat. 995, 997 (amending § 1782 to incorporate the Federal Rules of Civil Procedure), is sufficient to overcome the presumption, see 🔖 RJR Nabisco, 136 S. Ct. at 2101 ("At the first step, we ask whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially."); cf. 🔖 id. at 2102–03 (holding that incorporation of extraterritorial predicates sufficed to give indication that statute applied to some foreign activity and noting that "an express statement of extraterritoriality is not essential").

15   Compare, e.g., 🚩 Purolite Corp. v. Hitachi Am., Ltd., No. 17-mc-67, 2017 WL 1906905, at *2 (S.D.N.Y. May 9, 2017) (no extraterritorial application); 🚩 In re Application of Kreke Immobilien KG, No. 13-mc-110, 2013 WL 5966916, at *4

(S.D.N.Y. Nov. 8, 2013) (same); 🚩 *In re Godfrey*, 526 F.Supp.2d 417, 423 (S.D.N.Y. 2007) (same); 🚩 *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 194 n.5 (S.D.N.Y. 2006) (same); *with* 🏴 *In re Accent Delight Int'l Ltd.*, Nos. 16-mc-125, 18-mc-50, 2018 WL 2849724, at *4 (S.D.N.Y. June 11, 2018) (extraterritorial application); *In re Application of Eli Lilly & Co.*, No. 09-mc-296, 2010 WL 2509133, at *4 (D. Conn. June 15, 2010) (same); 🚩 *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, No. M19-88, 2006 WL 3844464, at *5 (S.D.N.Y. Dec. 29, 2006) (same).

16    Most courts that have concluded that § 1782 does not apply extraterritorially rely on dicta from this Court, a contemporaneous Senate report, and a 1998 article by one of § 1782's principal drafters. *See* 🚩 *Application of Sarrio, S.A.*, 119 F.3d 143, 147 (2d Cir. 1997) ("On its face, § 1782 does not limit its discovery power to documents located in the United States.... [But] despite the statute's unrestrictive language, there is reason to think that Congress intended to reach only evidence located within the United States."); S. Rep. No. 88-1580 (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3788 ("in obtaining oral and documentary evidence *in the United States*" (emphasis added)); Smit, *supra*, at 11 ("[I]f Section 1782 could be used for this purpose, American courts would become clearing houses for requests for information from courts and litigants all over the world in search of evidence to be obtained all over the world."). But given the plain meaning of the statute, which we adopt below, these considerations are insufficient to win the day. *See, e.g.,* 🚩 *Green v. City of New York*, 465 F.3d 65, 78 (2d Cir. 2006) ("Statutory analysis begins with the text and its plain meaning, if it has one. Only if an attempt to discern plain meaning fails because the statute is ambiguous, do we resort to canons of construction. If both the plain language and the canons of construction fail to resolve the ambiguity, we turn to the legislative history." (citations omitted)).

---

**End of Document**    © 2019 Thomson Reuters. No claim to original U.S. Government Works.